UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

AMY LYNN TOUTANT-SIMPSON,

        Plaintiff,

   v.                           Case No. 19-cv-1530-bhl

KILOLO KIJAKAZI,[1] Acting Commissioner for
Social Security Administration,

        Defendant.

---

## DECISION AND ORDER

---

      Amy Lynn Toutant-Simpson seeks review of a January 3, 2019 administrative law judge's decision denying her claim for disability insurance benefits under the Social Security Act. For the reasons set forth below, the ALJ's decision is affirmed.

## BACKGROUND

      On October 20, 2016, Toutant-Simpson filed a claim for social security benefits based on diagnoses of degenerative disc disease, myocardial infarction, obesity, bipolar disorder, and posttraumatic stress disorder. The Social Security Administration (SSA) first denied Toutant-Simpson's claim on January 13, 2017. Toutant-Simpson requested reconsideration, and the SSA referred her to Marie Miller-Christensen, Psy.D., for a mental status evaluation. Dr. Miller-Christensen examined the plaintiff on May 12, 2017 and filed a written report documenting the evaluation. R. 750-54. The SSA again denied Toutant-Simpson's claim upon reconsideration on June 2, 2017. R. 129.

      Toutant-Simpson appealed the denial of her claim to an ALJ, and an initial hearing was held on September 20, 2018. R. 10. At the hearing, Toutant-Simpson appeared with counsel. She testified that she had most recently worked as a resident attendant, registration clerk, and

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

shared-car driver. R. 41-47. In response to the ALJ's questions, Toutant-Simpson explained that she was unable to physically perform her previous work assisting residents at group homes because her back injury prevented her from bending, reaching, and squatting. R. 50-52. She further explained that her bipolar disorder had impacted her ability to work, with her depressive phases resulting in tardiness and poor attendance, R. 48, 52, 58, and her manic phases – which can last for a week or two – resulting in altercations with a coworker and supervisor, R. 47-48, 57-58. She explained that her tenure as a shared-car driver ended after she had altercations with two separate riders who were not at the correct pickup location. R. 42-43, 64. Toutant-Simpson also testified regarding the medications she has taken to help manage her symptoms, as well as her participation in various therapy programs. R. 59-61.

The ALJ also heard testimony from Edward Hopkins, CDMS, an impartial vocational expert (VE). The ALJ asked Hopkins whether someone with the claimant's same age, education, work experience, and residual functional capacity (RFC) would be able to perform Toutant-Simpson's past jobs. Hopkins answered in the negative. R. 67-68. The ALJ then asked Hopkins whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and RFC. Hopkins testified that, given all of those factors, the individual would be able to perform the requirements of several representative occupations, including Cleaner Housekeeper, Marker, and Shellfish Preparer. R. 68, 71-72. When asked what effect an individual's absences from work two or more times each month would have on available employment, Hopkins opined that such an individual would not be able to perform any jobs in the national economy. R. 69.

The ALJ issued a decision rejecting Toutant-Simpson's claim on January 3, 2019. The ALJ performed the five-step sequential evaluation under 20 C.F.R. §404.1520(a) to determine whether Toutant-Simpson was disabled. At step one, the ALJ concluded Toutant-Simpson had not engaged in substantial gainful activity since August 21, 2016, the alleged onset date. R. 13. At step two, the ALJ concluded that Toutant-Simpson had severe physical and mental impairments: degenerative disc disease status post-fusion surgery, history of myocardial infarction post-stenting, obesity, bipolar disorder, and posttraumatic stress disorder. R. 13-14. At step three, the ALJ concluded that the evidence did not support a finding that the severity of any of Toutant-Simpson's impairments, either singly or in combination, was sufficient to meet any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P App. 1. R. 14-16.

The ALJ then determined that Toutant-Simpson retained the RFC to perform light work as defined in 20 C.F.R. §404.1567(b), but with the following limitations: she could occasionally climb ramps and stairs, but never ladders, ropes and scaffolds, and she could occasionally stoop. She was limited to simple, routine, repetitive tasks. She could perform low stress work, limited to simple decision-making, and no more than occasional changes in the work setting. She was limited to frequent interaction with supervisors and coworkers, and occasional interaction with the public. R. 16-22. With these limitations, at step four, the ALJ found Toutant-Simpson was unable to perform any past relevant work. R. 22. But, at step five, the ALJ found Toutant-Simpson could perform work existing in significant numbers in the national economy. R. 23-24. Because the ALJ found Toutant-Simpson was capable of making a successful adjustment to other work that existed in the national economy, he concluded she was not disabled under sections 216(i) and 223(d) of the Social Security Act. R. 24.

Toutant-Simpson appealed the ALJ's decision to the Appeals Council, which denied her request for review on August 22, 2019. Toutant-Simpson filed this appeal on October 17, 2019.

## LEGAL STANDARD

The Commissioner's final decision on the denial of benefits must be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. §405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted). The Supreme Court has instructed that "the threshold for such evidentiary sufficiency is not high." *Id*. In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (internal quotations omitted).

In reviewing the entire record, this Court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943)).

ANALYSIS

On appeal, Toutant-Simpson has limited her arguments to two challenges of the ALJ's findings related to her mental impairments. First, Toutant-Simpson claims the ALJ materially erred by rejecting the opinion of her treating psychiatrist, Dr. Herbert Roehrich, MD. (ECF No. 18 at 8-11.) More specifically, Toutant-Simpson argues the ALJ did not provide good reasons for rejecting Dr. Roehrich's opinions related to her expected absenteeism; the ALJ did not discuss all of the factors set forth in 20 C.F.R. §404.1527(c); and the ALJ's rejection of Dr. Roehrich's opinion was not supported by substantial evidence. Second, Toutant-Simpson contends the ALJ committed material error when he ignored the assessment of clinical psychologist Dr. Marilyn Befera-Zielinski. (*Id*. at 11-12.) Because the record supports the ALJ's decision on both of these challenges, Toutant-Simpson's appeal must be rejected.

**I.  The ALJ's Rejection of Dr. Roehrich's Opinion Was Supported by Substantial Evidence**

Toutant-Simpson's principal argument on appeal is that the ALJ wrongly discounted the opinion of her treating psychiatrist, Dr. Roehrich. In assessing Toutant-Simpson's mental RFC in December 2016, Dr. Roehrich opined that her impairments would cause her to be absent from work more than four days per month. R. 696. At the September 2018 hearing, the vocational expert confirmed that a hypothetical individual with Toutant-Simpson's age, education, work experience, and RFC who experienced two or more absences from work a month would not be able to perform any jobs in the national economy. R. 69. Therefore, if Dr. Roehrich's opinion about Toutant-Simpson's level of absenteeism were credited, she would be disabled for purposes of social security benefits.

"For claims filed before March 2017, a treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is well-supported by medical findings and consistent with substantial evidence in the record." *Johnson v. Berryhill*, 745 F. App'x 247, 250 (7th Cir. 2018) (citing 20 C.F.R. §404.1527(c)(2); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016)). If an ALJ does not give the opinion controlling weight, the ALJ must still consider several factors to determine what value the assessment does merit, including the length, nature, and extent of the claimant's relationship with the treating source; the frequency of examination; whether the opinion is supported by relevant evidence; the opinion's consistency with the record as a whole; and whether the treating source is a specialist. *See* 20 C.F.R. §§404.1527(c), 416.927(c); *see also Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011).

Moreover, the ALJ must always give "good reasons" to support the weight he ultimately assigns to the treating source's opinion. *See* 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010).

Ultimately, "while the treating physician's opinion is important, it is not the final word on a claimant's disability." *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996) (quotation omitted). If the opinion is contradicted by other evidence or is internally inconsistent, the ALJ may discount it so long as he provides an adequate explanation for doing so. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (ALJ ought to have analyzed whether doctor's mental RFC questionnaire was consistent with her treatment notes as a whole); *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) ("[I]f the treating physician's opinion is inconsistent with the consulting physician's opinion, internally inconsistent, or based solely on the patient's subjective complaints, the ALJ may discount it.").

A.    **Treating Source Opinions**

In December 2016, Dr. Roehrich completed a mental residual functional capacity questionnaire, wherein he assessed Toutant-Simpson's mental abilities and aptitudes necessary to perform various work-related tasks. R. 692-96. In evaluating Toutant-Simpson's functioning, Dr. Roehrich was asked to assign one of five predetermined ratings: (1) Unlimited or Very Good; (2) Limited but satisfactory; (3) Seriously limited, but not precluded; (4) Unable to meet competitive standards; and (5) No useful ability to function. The Questionnaire specifically defines the three lowest ratings:

- *Seriously limited, but not precluded* means ability to function in this area is seriously limited and less than satisfactory, but not precluded in all circumstance.
- *Unable to meet competitive standards* means your patient cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting.
- *No useful ability to function*, an extreme limitation, means your patient cannot perform this activity in a regular work setting.

R. 694.

Dr. Roehrich gave Toutant-Simpson better scores on the section of the questionnaire that addressed her mental abilities and aptitude to do particular types of jobs. He opined that she was both "unlimited or very good" and "limited but satisfactory" in her abilities to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. He also rated

Toutant-Simpson's abilities "limited but satisfactory" in her ability to interact appropriately with the general public. R. 695.

Dr. Roehrich gave Toutant-Simpson generally lower grades on two other sections, which solicited his opinions on her mental abilities and aptitudes needed to do "unskilled work" and "semiskilled and skilled work," respectively. Her highest grades in these parts of the form were "limited but satisfactory" in the categories: remember work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; and be aware of normal hazards and take appropriate precautions. R. 694. Dr. Roehrich rated her lower, as "seriously limited, but not precluded," in four other categories, including her abilities to: maintain regular attendance and be punctual within customary, usually strict tolerances; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; understand and remember detailed instructions; and set realistic goals or make plans independently of others. *Id*. And Dr. Roerich indicated that Toutant-Simpson had *both* a "seriously limited, but not precluded ability" *and* was "unable to meet competitive standards" to perform the seven other categories, including: complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in a routine work setting; deal with normal work stress; carry out detailed instructions; and deal with stress of semiskilled and skilled work. R. 694-95.

Dr. Roehrich did not give Toutant-Simpson the lowest possible grade in any category. The Questionnaire includes no scores in the "no useful ability to function" range for any of the categories of mental abilities and aptitudes. R. 694-95.

After soliciting these ratings, the Questionnaire provides space in all three sections for the treating physician to "explain limitations falling in the three most limited categories." Dr. Roehrich did not provide any information in these portions of the questionnaire. R. 694-95. He noted on the final page of the questionnaire that Toutant-Simpson's impairments would cause her to be absent from work, on average, "More than four days per month." R. 696.

## B.     ALJ's Rationale for Rejecting Treating Source Opinions

Toutant-Simpson argues the ALJ did not provide good reasons for rejecting Dr. Roehrich's opinion regarding her expected absenteeism.  (ECF No. 18 at 8.)  The record shows otherwise.  The ALJ detailed all of Dr. Roerich's opinions regarding Toutant-Simpson's functional limitations.  R. 20-21.  After assigning some weight to Dr. Roehrich's opinion regarding the claimant's "limited, but satisfactory" limitations, the ALJ specifically criticized the treating physician for failing to explain his opinions regarding the more significant limitations. R. 21.  He also criticized Dr. Roehrich for assigning two different limitations to the same ability, which did "[not] make sense" and which the doctor "failed to explain."[2]  *Id*.  The ALJ further explained that many of the doctor's assessments of Toutant-Simpson's mental abilities and aptitudes were irreconcilable.  R. 21.  Specifically, as to Toutant-Simpson's potential absenteeism, Dr. Roerich rated her ability to "maintain regular attendance and be punctual within customary, usually strict tolerances," as "seriously limited, but not precluded."  R. 694.  Yet, the doctor also indicated that Toutant-Simpson had *both* a "seriously limited, but not precluded ability" *and* an "inability to meet competitive standards" to "complete a normal workday and workweek without interruptions from psychologically based symptoms" and to "perform at a consistent pace without an unreasonable number and length of rest periods."  *Id*.

Thus, the ALJ provided explanations for not crediting Dr. Roerich's opinions in their entirety.  As noted by the ALJ, Dr. Roerich's failure to explain his opinions regarding the limitations or include medical findings that supported his conflicting assessments undercut the reliability of those opinions.  R. 21, 694-95.  The apparent inconsistencies identified between the physician's check-the-box grades also warranted the ALJ's refusal to accept Dr. Roehrich's opinions.  *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) (noting "internal inconsistencies may provide good cause to deny controlling weight to a treating physician's opinion").  The ALJ also found – as discussed in more detail further below – that Dr. Roehrich's opinions were inconsistent with the objective medical evidence including the doctor's own noted observations during treatment and Toutant-Simpson's performance on the mental status portion of the

---

[2] The ALJ's decision read:  "Notably, in many instances, Dr. Roerich indicated that the claimant has both a 'seriously limited, but not precluded ability' and an 'inability to meet competitive standards' to perform certain tasks, which does make sense, and which Dr. Roerich failed to explain."  R. 21.  The ALJ's rationale for rejecting the treating source opinion only makes sense by including "not" in his narrative.

psychological consultative examination with Dr. Miller-Christensen. *Id.* Both individually and collectively, these issues reasonably support the ALJ's treatment of Dr. Roehrich's opinions.

## C. ALJ's Failure to Discuss 20 C.F.R. §404.1527(c) Factors

Toutant-Simpson also complains that the ALJ did not discuss all of the §404.1527(c) factors designed to help the ALJ "decide how much weight to give the treating physician's evidence," *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) – namely whether Dr. Roehrich was a specialist; the frequency of examinations; and the length, nature, and extent of Toutant-Simpson's relationship with Dr. Roehrich. But the Seventh Circuit has confirmed that the failure to articulate findings with respect to each factor does not constitute reversible error. *See Karr v. Saul*, 989 F.3d 508, 512 (7th Cir. 2021) (ALJ affording treating physician's opinion only "partial weight" without marching through §404.1527(c)(2) factors was harmless error). Hence, even if the ALJ had explicitly recognized Dr. Roehrich's specialization, the length of Toutant-Simpson's treatment, and the frequency of examinations, such recognition would not have overcome the fact that the opinions expressed in the mental RFC questionnaire were internally inconsistent and not supported by the doctor's own treatment notes. *Cf. Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("Although by itself a check-box form might be weak evidence, the form takes on greater significance when it is supported by medical records.").

## D. Medical Records and Consultative Examination

Toutant-Simpson next maintains that the ALJ's rejection of Dr. Roehrich's opinion was not supported by substantial evidence. This argument ignores the objective medical evidence cited by the ALJ as contradicting Dr. Roehrich's opinion. For example, the ALJ cited three psychotropic medication management appointments attended by Toutant-Simpson. [3] R. 19-21. He noted that Toutant-Simpson's own testimony concerning weekly mood swings was inconsistent with Dr. Roehrich's April 2017 report of monthly mood swings. R. 22 (citing Dr. Roehrich's April 12, 2017 Progress Notes, cited as Ex. 15F/12; R. 741). The ALJ also cited Dr. Roehrich's November 16, 2016 Progress Notes, which described Toutant-Simpson as neatly

---

[3] The ALJ further considered Dr. Jeranek's August 8, 2016 Medical Report indicating Toutant-Simpson reported at her annual physical examination that her medication regimen was controlling her bipolar disorder. R. 19 (cited as Ex. 7F/l; R. 603). Additionally, the ALJ noted that during Toutant-Simpson's partial inpatient hospitalizations in 2017 and 2018, her mental status examinations showed no more than moderate limitations. (R. 19-20.) The ALJ also took into account Toutant-Simpson's reported daily activities – preparation of simple meals, performance of household chores, driving a car, paying bills, managing bank accounts, prompting her son to get ready for school and appointments, and helping him with homework – and concluded her activities were not limited to the extent one would expect, given her complaints of disabling symptoms and limitations. (R. 20.)

groomed, alert, and oriented, and noted she experienced both fatigue and improved energy, depending on the circumstances. R. 19 (cited as Ex. 3F/11; R. 581). Finally, he pointed to Dr. Roehrich's November 8, 2017 Progress Notes, which similarly described Toutant-Simpson's presentation and noted that while her primary reported problem was anergia, she continued to look for work, *id*. (cited as Ex. 18F/5; R. 803).

The ALJ further concluded that Dr. Roehrich's opinions were inconsistent with Toutant-Simpson's performance on the mental status portion of the psychological consultative examination with Dr. Miller-Christensen. R. 21. Dr. Miller-Christensen personally evaluated Toutant-Simpson in May 2017 and determined she would *not* be expected to have difficulties in categories in which Dr. Roehrich had found significant limitations, such as withstanding routine work stress, and adapting to change. R. 754. The ALJ nevertheless acknowledged Dr. Miller-Christensen's opinion that Toutant-Simpson's reported attendance issues could "present problems with her future success." R. 21, 754.

Toutant-Simpson argues the ALJ failed to explain how Dr. Miller-Christensen's observations "undermined" Dr. Roehrich's medical opinion. But this misstates the ALJ's analysis. The ALJ assigned *some* weight to Dr. Miller-Christensen's observations, explaining they were based upon a single examination and did not fully account for Toutant-Simpson's ongoing mental health treatment. R. 21. Toutant-Simpson's argument, then, boils down to a disagreement about how the evidence should have been weighed, and that is no reason to overturn the ALJ's decision.[4] *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). The regulations reserve to the Commissioner "the final responsibility for deciding residual functional capacity (ability to work – and so whether the applicant is disabled)." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (citing 20 C.F.R. §404.1527(e)(2)); *see also Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001) ("[A] claimant is not entitled to disability benefits simply because her physician states that she is 'disabled' or unable to work. The Commissioner, not a doctor selected by a patient to treat her, decides whether a claimant is disabled."). A reviewing court may not re-weigh the evidence or substitute its judgment for that of the ALJ. *Pepper v.*

---

[4] The ALJ also considered and assigned *some* weight to the opinions of state agency psychological consultants, Dr. Frank Orosz and Dr. Therese Harris. R. 21-22. Dr. Orosz concluded Toutant-Simpson would be capable of routine work tasks, in an environment with limited interpersonal demands, and ordinary levels of day-to-day work stresses. R. 89-91. Dr. Harris concluded Toutant-Simpson would be able to maintain focus, pace, and persistence for simple tasks for 2-hour periods over an 8-hour workday within a normal 40-hour work schedule. R. 106-07.

*Colvin*, 712 F.3d 351, 362 (7th Cir. 2013).  In this case, the ALJ articulated sufficient reasons for rejecting Dr. Roehrich's opinions regarding Toutant-Simpson's serious limitations and expected absenteeism.

## II.     The ALJ's Failure to Consider One of Toutant-Simpson's Two GAF Scores Was Not Material Error

In December 2016, Dr. Roehrich assigned Toutant-Simpson a Global Assessment Functioning (GAF) score of 45.  R. 692.  In November 2017, Dr. Marilyn Befera-Zielinski, Ph.D., assigned her a GAF score of 50.  R. 935.  The ALJ did not discuss Dr. Befera-Zielinski's assessment of Toutant-Simpson's GAF score of 50 and assigned little weight to Dr. Roehrich's assessed GAF score of 45.  R. 22, 692.  Toutant-Simpson argues that the ALJ's failure to consider Dr. Befera-Zielinski's assessment was reversable error.

The GAF score is a tool used by clinicians to evaluate an individual in global terms, with respect to "psychological, social, and occupational functioning."  Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, DSM-IV at 32 (2000).[5]  In general, GAF scores are "useful for planning treatment" but do not necessarily reflect a patient's functional level.  *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).  Rather, GAF scores reflect either severity of symptoms or functional level, whichever is worse.  *Id*.  Accordingly, "nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score."  *Id*. (citation omitted).

As to having assigned little weight to Dr. Roehrich's GAF Score, the ALJ ultimately determined that the GAF scores had limited value in determining disability.  R. 22, citing 65 Fed. Reg. 50746, 50764-65 (2000).  The ALJ properly noted that, although GAF scores can be helpful in the decision-making process, they are "considered a snapshot of functioning at the time of the examination and not determinative of overall disability."  *Id*.  The fact that the ALJ mentioned only one of two GAF scores in his decision does not mean that the ALJ's finding was not based on substantial evidence.  According to the medical records, Toutant-Simpson saw Dr. Befera-Zielinski for 45-minute therapy sessions on two occasions:  November 28, 2017, R. 934-36, and December 29, 2017, R 932.  Aside from diagnosing Toutant-Simpson with Bipolar II disorder and a GAF score of 50, Dr. Befera-Zielinski did not provide any other opinions regarding Toutant-Simpson's functional limitations.  Without an underlying narrative from the treating

---

[5] The American Psychiatric Association abandoned the GAF scale in the DSM-V.

source, consideration of the GAF score would inappropriately take place in a vacuum. *Cf. Denton v. Astrue*, 596 F.3d at 425 (explaining GAF score "does not reflect the clinician's opinion of functional capacity"). Further, this is not an instance where the ALJ relied on low GAF scores, but then failed to consider higher GAF scores. *See, e.g., Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014) (noting ALJ improperly "seize[d] upon" GAF "high-water" mark of 60 while ignoring lower scores); *Walters v. Astrue*, 444 F. App'x 913, 919-20 (7th Cir. 2011) (remanding because ALJ "certainly thought GAF scores important, as he cited the high GAF scores" from certain doctors while ignoring lower score). Consequently, the ALJ did not materially err in not including Dr. Befera-Zielinski's GAF score in his RFC determination.

For all of the foregoing reasons, the Court finds that the ALJ's decision is supported by substantial evidence and that Toutant-Simpson has not demonstrated that the ALJ committed reversible error.

## CONCLUSION

IT IS ORDERED that the Commissioner's decision is AFFIRMED. The clerk of court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on October 22, 2021.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge